UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80033-CIV-MIDDLEBROOKS/JOHNSON

HALLAM BYER

    Plaintiff,

vs.

DTG OPERATIONS, INC.,

    Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This Cause comes before the Court on Defendant's Motion for Summary Judgment (DE 8), filed July 9, 2007. The Court has reviewed the record and is fully advised in the premises.

**I. Background**

Plaintiff Hallam Byer ("Byer") filed the instant action alleging violations of the Age Discrimination Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA") and the Florida Civil Rights Act of 1992, Fla. Stat. § 760 et seq. ("FCRA"). Specifically, Byer alleges that his former employer, DTG Operations, Inc. ("DTG"), retaliated against him by terminating his employment on March 16, 2006 as a result of his filing an age discrimination claim with the Equal Employment Opportunity Commission ("EEOC") against DTG in 2004.[1] Byer's position

---

[1] In his complaint, Byer also alleged discrimination on the basis of age discrimination, in addition to his retaliation claim; however, in its Motion for Summary Judgment, Defendant noted that Plaintiff's counsel agreed that any age discrimination claim is time-barred. Def.'s Mot. Summ. J. n.1. Additionally, the parties have since stipulated that Plaintiff has abandoned the count of age discrimination in the Complaint and the sole remaining issue to be litigated is Plaintiff's claim of retaliation.

is that, contrary to DTG's claim that it fired him for sleeping on the job twice, he was actually fired for filing the 2004 age discrimination claim and that any other reasons DTG offers for firing him are pretextual. Byer timely filed a charge of discrimination with the EEOC, again claiming age discrimination and retaliation. After receiving a right to sue letter, Byer filed the instant suit.

**II. Facts**

DTG, a rental car company with its headquarters in Tulsa, Oklahoma, operates rental car facilities under both the Dollar Rent A Car ("Dollar") and Thrifty Car Rental ("Thrifty") brands. (Berroteran Aff. ¶ 5.) DTG rents vehicles on a temporary basis to tourists, business travelers, and other individuals requiring the use of a vehicle. (Berroteran Aff. ¶ 5.) DTG maintains a facility in West Palm Beach, Florida that consists of a rental counter and a maintenance facility. (Berroteran Aff. ¶ 6.) Henrietta Berroteran was the Director of Field Employee Relations. (Berroteran Aff. ¶ 2.) At all times relevant, the management structure at DTG's West Palm Beach facility was as follows: General Manager Paul Kobis ("Kobis") supervised and managed operations and was ultimately responsible for the supervision of all West Palm Beach employees. (Kobis Aff. ¶ 2.) Additionally, he was involved in or reviewed all hiring, termination, and disciplinary decisions. (Kobis Aff. ¶ 2.) Todd Kushner ("Kushner"), Maintenance Manager, and Kristin Tennant ("Tennant"), Operations Manager, assisted Kobis in supervising West Palm Beach employees. (Berroteran Aff. ¶ 6.) Kushner's predecessor was Ed Ryan ("Ryan"). (Kobis Aff. ¶ 3.)

Effective January 3, 1995, DTG hired Byer as a part-time mechanic at its Fort Lauderdale facility. (Byer Dep. at 35.) At that time, Byer was fifty-three years old. (Byer Dep. at 11.) This position was eliminated in June 1995. (Berroteran Aff. Ex. 4.) In September 1995, DTG re-

hired Byer as a full-time Auto Technician at its West Palm Beach facility. (Berroteran Aff. Ex. 5). In September 1996, Byer transferred to DTG's Fort Lauderdale facility, where he worked on DTG's fleet of rental cars as a Master Mechanic, and then on shuttle buses used to transport customers to and from the airport terminal and DTG's rental locations as a Bus Technician, until January 2004. (Berroteran Aff. ¶ 9, Ex. 6.)

In 2003, Byer began experiencing some problems with his co-workers and supervisors at the Fort Lauderdale location. Specifically, Byer was upset because he felt other mechanics were blocking his access to the repair bays and harassing him. (Byer Dep. at 38-44.) Thus, Byer requested a transfer to the West Palm Beach facility. DTG transferred Byer back to the West Palm Beach location in January 2004. (Kobis Aff. ¶¶ 4,5.) Shortly after this transfer, Kobis and Ryan asked Byer if he would be willing to work as a Bus Technician, because DTG had recently acquired several new buses and the location had no other mechanics with the requisite knowledge or experience to maintain the shuttle bus fleet. (Kobis Aff. ¶ 5.)

In April 2004, Byer complained to Kobis that he was having problems with his supervisor, Ryan. Specifically, Byer felt Ryan was "short" with him, not treating him fairly, had used foul language on two occasions, including one occasion in which Ryan stated Byer was "too f-ing old." (Kobis Aff. ¶ 7, Ex. 1.) Kobis promptly responded by coordinating a meeting with Byer and Ryan on April 28, 2004. (Kobis Aff. ¶ 8.) Byer was unable to identify any witnesses to the alleged comments and Ryan denied making these comments. (Kobis Aff. ¶ 8.) Kobis counseled Ryan regarding DTG's intolerance of unprofessional language and conduct, and counseled Ryan and Byer regarding their working relationship. (Kobis Aff. ¶ 9.) Shortly after the meeting, Kobis instructed Ryan to reconfirm with Byer that he was interested in focusing on

3

repairing DTG's buses. (Kobis Aff. ¶ 9.) Byer confirmed he was interested, and Ryan began assigning all bus-related maintenance and repair jobs to Byer. (Kobis Aff. ¶ 10, Ex. 1.)

In 2004, Byer filed a charge of age discrimination and retaliation with the EEOC. (Byer Aff. ¶ 8.) DTG received notice that Byer filed the charge on June 2, 2004. (Berroteran Aff. ¶ 10.) DTG Human Resources, Kobis, and Byer had a series of discussions throughout Fall 2004, during which Byer indicated the harassment had stopped and that he was happy with his job as a Bus Technician. (Berroteran Aff. ¶10.) In December 2004, Byer voluntarily withdrew his charge prior to the conclusion of the EEOC's investigation and prior to any findings by the EEOC. (Berroteran Aff. Ex. 9.)

Following the withdrawal of the 2004 charge of discrimination and until November 2005, Byer continued to work without incident. The conditions at work improved. (Byer Dep. at 55.)

On March 16, 2006, DTG terminated Byer's employment for sleeping on the job, in violation of company policy. (Byer Dep. at 57-58; Berroteran Aff. ¶ 13.)

Byer filed a charge of discrimination with the EEOC shortly after his termination, in which he alleged that he was retaliated and discriminated against because of his the 2004 charge in which he alleged age discrimination. (Berroteran Aff. Ex. 16.) Following its investigation, the EEOC issued a "right to sue" letter and concluded that the information obtained did not appear to establish violations of the ADEA.

**III. Summary Judgment Standard**

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this

exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In applying this standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the non-moving party. *See Arrington v. Cobb County*, 139 F.3d 865, 871 (11th Cir. 1998); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The non-moving party, however, bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in their favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Further, conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment. *See Earley*, 907 F.2d at 1081. The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See Celotex*, 477 U.S. at 322.

**IV. Legal Analysis**

    **A. Elements of an ADEA Retaliation Claim**

For claims arising under the ADEA, the Eleventh Circuit has adopted the principles of law applicable to cases arising under the very similar provisions of Title VII, 42 U.S.C. § 2000e *et seq*. *Drago v. Jenne*, 453 F.3d 1301, 1307 (11th Cir. 2006)*; Hairston v. Gainesville Sun*

*Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (citing *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989). It is well established that courts evaluate ADEA cases using the same burden-shifting framework described in *McDonnell Douglas Corp. v. Green. Id; see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Furthermore, the same legal analysis also governs Byer's FCRA claim, as it has been uniformly held that federal case law regarding Title VII is applicable when construing FCRA claims. *Albra v. Advan, Inc.*, 490 F.3d 826, 834 (11th Cir. 2007); *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000); *Brand v. Florida Power Corp.*, 633 So.2d 504, 509 (Fla. 1st DCA 1994); *Florida Dep't of Community Affairs v. Bryant*, 586 So.2d 1205 (Fla. 1st DCA 1991). Accordingly, I turn to my analysis regarding Byer's retaliation and FCRA claims under this standard.

Under the *McDonnell Douglas* framework, a plaintiff claiming must first establish a prima facie case of retaliation. *McDonnell Douglas*, 411 U.S. at 802. Once a plaintiff establishes the *prima facie* case, there arises a presumption of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to the employer to state a legitimate, nondiscriminatory reason for the employment decision. *Id.* at 802-803. If the employer successfully does so, the burden shifts back to the plaintiff to show that the reason offered by the employer was pretextual. *Id*. at 804. The employer's burden to proffer a legitimate reason for the action has been described as one of production, not persuasion, and it can involve no credibility assessment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). It is the plaintiff who bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct. *See Olmsted v. Taco Bell Corp*., 141 F.3d 1457, 1460 (11th Cir. 1998).

To establish a prima facie case of retaliation, therefore, Byer must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events. *See Drago*, 453 F.3d at 1307. The Eleventh Circuit has noted that the causal link requirement under Title VII must be construed broadly; "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *E.E.O.C. v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571-72 (11th Cir.1993).

### B. Plaintiff's Prima Facie Case

It is uncontested that Plaintiff has satisfied the first two requisite elements of a valid retaliation claim. Specifically, Byer's 2004 EEOC claim constitutes statutorily protected expression, and his 2006 termination constitutes an adverse employment action. It is then necessary to determine whether Byer has established the third element of his claim - whether there is a causal relationship between the 2004 filing and his 2006 termination. DTG disputes the third element of the prima facie case. DTG contends that Byer has failed to establish a causal relationship between his 2006 discharge and his 2004 filing.

In order to establish this causal relationship, Byer must prove that: 1) the decision-makers responsible for the adverse employment action were aware of the protected conduct, and 2) the adverse acts were at least somewhat related and in close temporal proximity to the protected activity. *Higdon v. Jackson*, 393 F.3d 1211 (11th Cir. 2004); *Murry v. Gonzales*, 2006 U.S. Dist. LEXIS 60935 at *33 (M.D. Fla. Aug. 28, 2006). "At a minimum, [a plaintiff] must show that the adverse act followed the protected conduct." *Hammons v. George C. Wallace State Cmty. College*, 174 Fed. Appx. 459, 464 (11th Cir. 2006) (quoting *Griffin v. GTE Fla.,*

*Inc.,* 182 F.3d 1279, 1284 (11th Cir. 1999)). "If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Higdon*, 393 F.3d at 1220.

Byer argues that the decision-makers involved - Berroteran, Kobis, Sturdivant, and Tennant - knew of his 2004 EEOC charge and were involved in his 2006 firing. The evidence establishes that Henrietta Berroteran, the Director of Field Employee Relations was involved in preparing DTG's response to Byer's 2004 EEOC charge and was involved in Byer's termination in 2006. She reviewed and approved the request from West Palm Beach to terminate Byer's employment for sleeping on the job (Berroteran Aff. ¶ 3.) Kobis is ultimately responsible for the supervision of all West Palm Beach employees and either is involved in or reviews all hiring, termination, and disciplinary decisions.

According to DTG, on March 15, 2006, Fleet Manager Steve Sturdivant ("Sturdivant") observed Byer slouched over and apparently asleep in the back of a shuttle bus around 1:40 pm. (Berroteran Aff. ¶ 12; Ex. 12.) Sturdivant called Kushner and Tennant to report his observation. Kushner arrived at the location approximately twenty minutes later and observed Byer still slouched over in the back of the bus. (Berroteran Aff. Ex. 12, 13.; Kushner Aff. ¶ 6, Ex. 1.) Kushner then spoke with Art Owens ("Owens"), one of Byer's co-workers in the maintenance department, who stated that, sometime during their lunch break, which was from 12:30 pm until 1:00 pm, Byer left the break room and Owens saw him get on the shuttle bus and sit down in the backseat. (Kushner ¶ 7, Ex. 2.) Later that day, Kushner and Tennant informed Byer that he was being suspended pending an investigation of his sleeping on the job. Tennant reminded Byer that sleeping on the job was a violation of company policy. (Berroteran Aff. Ex. 14, 15; Kushner Aff.

¶ 8.)  Kushner spoke with Kobis and recommended Byer's termination for violating company policy by sleeping on the job.  (Kushner Aff. ¶ 9.)  Kobis agreed and forwarded the recommendation to DTG's corporate Human Resources department, which ultimately approved the termination.  (Berroteran Aff. ¶ 14.)

The evidence establishes that Kushner initiated Byer's termination proceedings.  DTG did not employ Kushner until September 2005, after Byer's 2004 EEOC charge.  Byer has provided no evidence indicating that Kushner was even aware of the 2004 charge; thus, he fails to establish that the individual responsible for commencing his termination proceedings had any knowledge of his 2004 charge, and so, I find that he has failed to establish a causal relationship between his 2006 termination and his 2004 EEOC charge.

However, I note that even if Byer established that all of the individuals responsible for his termination did have knowledge of his 2004 filing, his claim would still fail because he has not established that his termination was at least somewhat related and in close temporal proximity to the protected activity.  *Higdon*, 393 F.3d at 1220.  The record is uncontroverted and establishes that there is a nearly twenty-two month temporal span between Byer's 2004 charge and his 2006 termination.  This time frame exceeds those intervals of time that courts have found appropriate temporal proximity sufficient to establish causation.  *See, e.g.,* Clark County School Dist. v. Breeden, 522 U.S. 268, 273-74 (2001) (finding that a three-month interval was insufficient to establish causation); *Drago*, 453 F.3d at 1307-08 (finding that a three-month interval between adverse actions and protected act is too long to establish causation).  It is clear that a time period of nearly two years is too far removed in time to establish that the "adverse act followed the protected conduct."  *Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1284 (11th Cir. 1999).  Moreover,

Byer has not established that the two incidents were at least somewhat related.  Byer's protected activity took place in May 2004 and he was discharged in March 2006.  He attempts to narrow the period of time between the 2004 and an adverse act by claiming that after the 2004 charge he was subjected to disparate treatment because he was subjected to closer monitoring and scrutiny than younger employees and than employees who had not complained to the EEOC about discrimination.  (Compl. ¶ 21.)  Byer had included this claim in his 2006 charge.  However, Byer fails to indicate what record evidence supports this allegation, and the Court is unaware of any such evidence.

Byer provides only one specific event he believed to be retaliatory which occurred prior to his termination.  Specifically, he alleges that Ryan, his immediate supervisor, told him that on numerous occasions he, Ryan, was being pressured and asked by management Fort Lauderdale management to find reasons to write him up and fire him.  (Byer Dep. at 55.)  Ryan later denied making these statements, and the record is devoid of any evidence corroborating that Ryan made such statements.  However, even if Byer could prove that Ryan did, in fact, make such statements, the fact remains that the record simply contains no evidence connecting the statements, which occurred from December 2004 to August 2005, to either 2004 charge or the 2006 termination.  In fact, the record belies any such relationship.  This time frame also exceeds those intervals of time that courts have found temporal proximity sufficient to establish causation.  In his deposition, Byer stated that, after he filed his 2004 charge, the situation with DTG improved.  (Byer Dep. at 55.)  I find that Byer has not established a causal connection between his 2004 charge and his 2006 termination and, as such, he has failed to establish a *prima facie* case of retaliation.

**C. Pretext**

Even were it to be assumed that Plaintiff had established a prima facie case of retaliation, DTG has offered a non-discriminatory, legitimate reason for Byer's termination, that he was sleeping on the job. The burden would shift to Byer to establish that such proffered reason is merely a pretext. I find that Byer has not met this burden.

It is well established that in order to avoid summary judgment a plaintiff must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination. If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. The plaintiff can show pretext through evidence that (1) a discriminatory reason more likely motivated the employer or (2) the employer's reasons are unworthy of credence. The plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence. *Champ v. Calhoun County Emergency Mgmt. Agency*, 2007 U.S. App. LEXIS 7037, *12 (11th Cir. 2007).

In examining DTG's proffered non-discriminatory reason for the adverse employment action, I note that

> A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply

>  quarreling with the wisdom of that reason. Federal courts do not sit
>  as a super-personnel department that reexamines an entity's business
>  decisions.

*Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (internal citations omitted).

With this in mind I turn to DTG's proffered non-discriminatory reason for Byer's 2006 termination.  The record reflects that on November 17, 2005, Dispatcher Marie Harrison ("Harrison") and Lead Service Agent George Aleman ("Aleman") reported that they had observed Byer sleeping in a rental car.  (Berroteran Aff. ¶ 11; Ex. 10.)  Aleman immediately told Kushner, Byer's supervisor at the time, and asked him to come see for himself; however, Byer had already exited the car when Kushner arrived.  (Berroteran Aff. ¶ 11; Ex. 10, 11.)  Although the incident was written up, DTG decided not to discipline Byer at that time, because Kushner did not personally observe Byer sleeping in the car.  (Berroteran Aff. ¶ 11.)

On March 15, 2006, Fleet Manager Steve Sturdivant ("Sturdivant") observed Byer slouched over and apparently asleep in the back of a shuttle bus.  (Berroteran Aff. ¶ 12; Ex. 12.) Sturdivant called Kushner and Tennant to report this and Kushner arrived at the location approximately twenty minutes later and personally observed Byer slouched over in the back of the bus.  (Berroteran Aff. Ex. 12, 13.; Kushner Aff. ¶ 6, Ex. 1.)  Kushner then spoke with Art Owens ("Owens"), one of Byer's co-workers in the maintenance department, who stated that, sometime during their lunch break, which was from 12:30 pm until 1:00 pm, Byer left the break room and Owens saw him get on the shuttle bus and sit down in the backseat. (Kushner ¶ 7, Ex. 2.)

Later that day, Kushner and Tennant informed Byer that he was being suspended pending an investigation of his sleeping on the job.  Byer was informed that sleeping on the job was a

violation of company policy.  (Berroteran Aff. Ex. 14, 15; Kushner Aff. ¶ 8.)  Both Kushner and Tennant state that Byer admitted he may have "dozed off" while on the bus that day.  (Berroteran Aff. Ex. 14, 15.)  Kushner spoke with Kobis and recommended Byer's termination for violating company policy by sleeping on the job.  (Kushner Aff. ¶ 9.)  Kobis agreed and forwarded the recommendation to DTG's corporate Human Resources department, which ultimately approved the termination.  (Berroteran Aff. ¶ 14.)

DTG contends that this evidence, consisting of reports from multiple employees that Byer was sleeping on the job on two occasions, demonstrates that DTG believed in good faith that Byer was sleeping on the job, in violation of company policy, and, motivated by that belief, terminated his employment.  There is sufficient evidence to support this assertion.  Accordingly, I find that DTG has satisfied its burden of articulating a non-discriminatory reason for Byer's 2006 termination.

As outlined above, having found that DTG has satisfactorily articulated a legally sufficient non-discriminatory reason for Byer's 2006 termination, the burden shifts to Byer to establish, by a preponderance of the evidence, that DTG's proffered reason was in fact merely a pretext for prohibited, retaliatory conduct.

In support of his claim of pretext, Byer points the Court to his Statement of Material Facts in which he stated that he was not sleeping and that he was not slouched over for a twenty-minute period, as DTG stated.  (Def. Statement of Material Facts ¶¶ 1, 2.)  He contends that, in his deposition, he testified that he said nothing when confronted with the allegation he was sleeping on the job.  (Byer Dep. at 70-73.)  This contradicts record evidence by multiple DTG employees that Byer had stated that he may have "dozed off."  Byer further contends that DTG,

13

during the course of its investigation, never asked him whether he had been sleeping, and that therefore a jury could choose to believe him and not DTG regarding the statements and so find that, because he disputes whether he admitted to sleeping, that DTG's managers are lying, and determine that DTG's proffered reason of Byer sleeping on the job was a pretext for retaliatory discharge. Byer further asserts that a jury could choose to believe that the "Corrective Action Notice" DTG issued to Byer informing him that he had been sleeping on the job on November 16, 2005. Byer alleges that he never received the "Corrective Action Notice" dated November 17, 2005, and so there is a dispute as to whether DTG fabricated the Notice, which would allow a jury to reasonably conclude that DTG's stated reason for firing Byer is "a sham."

However, it is well established that "the factual issue to be resolved is not the wisdom or accuracy of [an employer's] conclusion" that an employee's termination is justified. *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). Thus, while Byer may quarrel with whether he was, in fact, sleeping, and whether he should have, but did not, receive the 2005 Corrective Action Notice, his dispute is legally insufficient to establish pretext. To establish pretext, Byer must address whether DTG's *belief* that he was sleeping on the job was a reasonable basis for DTG's action. Byer fails to address this issue. In essence, Byer's argument is that DTG fabricated all incidents relating to him sleeping on the job, that he never did sleep on the job and that a jury could infer he was terminated for a retaliatory reason.

Byer cites to *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) to support his contention that he has established a genuine issue of material fact sufficient to go forward to a jury since a jury could choose to believe Byer, that DTG's proffered reason false. In *Reeves*, the plaintiff employee claimed he was fired because of age discrimination. *Reeves*, 530

U.S. at 138. The employer in *Reeves* submitted evidence indicating the employee had been fired for failure to maintain adequate attendance and time-keeping reports. *Id.* at 137. Plaintiff introduced evidence that he had accurately maintained the records and that his supervisor had demonstrated age-based animus toward the plaintiff. *Id.* at 138. The jury found in favor of the plaintiff, but the Fifth Circuit reversed. The Supreme Court granted *certiorari* and held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148. In *Reeves*, the Court noted that the plaintiff introduced substantial evidence demonstrating that the employer's explanation was false, including evidence showing he had properly maintained attendance records and that errors in monthly reports were not attributable to the plaintiff. *Id.* at 145.

As other Courts in this Circuit have noted, "*Reeves* does not stand for the proposition that any evidence of falsity, regarding the reason for termination, combined with a prima facie case is sufficient to withstand summary judgment." *See, e.g.*, *Sonnier v. Computer Programs & Sys., Inc.*, 168 F. Supp. 2d 1322, 1331 (S.D. Ala. 2001). *Reeves* itself provided factors for courts to consider, such as the "strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case." *Reeves*, 530 U.S. at 149.

Here, unlike in *Reeves*, DTG has provided substantial evidence in the record from its employees and managers affirming that they had seen Byer sleeping on the job. DTG also provides testimony about the investigation and Corrective Notice. In opposition, Byer offers only his own conclusory statements that the investigation was a "sham" and that he was told "on

15

numerous occasions" by his immediate supervisor, Ed Ryan, that Ryan was being pressured by Fort Lauderdale management to find reasons to "write [Byer] up and fire [him]." (Byer Dep. at 55.) Such conclusory statements are not supported by any other evidence. Byer did not submit any deposition or affidavit by Ed Ryan. Even if Ryan's statements could be proven, they fail to support Byer's claim that his termination was based on retaliation for filing the 2004 charge. He alleges that these comments occurred in late 2004 through August 2005, but Byer was not terminated until March 2006. There is no other evidence of any connection between Ryan's statements and the 2004 charge or his 2006 termination. At best, Ryan's alleged statement would show that DTG may have had "undisclosed motives for firing [Byer]." *Sonnier*, 168 F. Supp. 2d at 1332. Pretext is only proven if it is "shown *both* that DTG's reason was false, and that discrimination was the real reason behind the challenged action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993). To overcome summary judgment, Byer needs to demonstrate that these lies were a pretext *for retaliation*. This Byer has failed to do.

Byer next attempts to establish pretext by introducing his statement that, in January 2006, a DTG manager told Byer he had caught another employee sleeping on the job, but that that employee was not fired. (Byer Dep. at 65-66.)

A plaintiff may establish pretext by establishing that a similarly situated employee - a comparator - was treated differently. To demonstrate that another employee is similarly situated to the plaintiff, the Eleventh Circuit requires "that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999). Byer must show that he and the comparator employee are similarly situated "in

16

all relevant respects, including [] past performance and disciplinary history." *Bazemore v. Ga. Tech. Auth.*, No. 05-cv-1850, 2007 U.S. Dist. LEXIS 20780 (N.D. Ga. Mar. 23, 2007).

Here, Byer argues that a manager named Todd told him that another employee, Fritz, also at the West Palm Beach facility, had been sleeping on the job and was not fired. (Byer Dep. at 65-66.) Byer did not depose the manager and there is no other evidence supporting this assertion. The record is devoid of any evidence which would allow the Court to find that Fritz is a similarly situated employee. There is absolutely nothing in the record regarding: the position held; how many witnesses had seen Fritz sleeping; whether anyone besides Todd, the manager, had seen Fritz sleeping; whether there was an inquiry into the incident; whether Fritz had been caught sleeping before; or whether Fritz is within the same protected class as Byer. Accordingly, I find that Byer has failed to establish pretext by use of a comparator.

## V. Conclusion

For the reasons set forth above, I find that Byer's claim of retaliatory discrimination under the ADEA and FCRA fails as a matter of law and so, it is accordingly,

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (DE 8) is GRANTED.

DONE AND ORDERED in Chambers at West Palm Beach, FL, this 18th day of September, 2007.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

copies to counsel of record